Moncure, P.,
delivered the opinion of the court.
This is an appeal from a decree of the circuit of Gloucester county, rendered on the 7th day of August 1874, in two causes then pending in said court. The only question presented by the appeal is, as to the true construction of a portion of the will of Rebecca Innes, which is in these words:
“First: I give and devise to my niece, Susan Byrd, widow and relict of ffm. Byrd, dee’d, late of Gloucester, the arrears of all interest which may be due me at the time of my death, and all the interest which, during her life, may accrue, on a debt due to me of five hundred pounds sterling, from the estate of the said William Byrd, and for which there was a decree in my favor, the 24th day of May 1800, in the high court of chancery in Richmond; and I direct that the said -shall remain on the said security during the life of the said Susan Byrd. Item. After the death of the said Susan Byrd, I give the said sum of money to Fielding Lewis of Charles City, in trust for Courtney W. Brooke, daughter of Elizabeth Brooke; and I request that it be vested in bank-stock, and applied by the said Fielding Lewis, for the benefit of the said Courtney, as he shall think proper. Item. In ease the said Courtney W Brooke shall die under the age of twenty-one years, or marries, I direct that the stock before given to my friend Fielding Lewis for her benefit, be vested in him, in trust for Elizabeth Brooke, her mother, and Mary Chiswell Nelson, my great-nieces, to be advanced to them in equal portions, as the said Fielding Lewis may think proper, and free from the control of their husbands.”
Susan Byrd, the legatee for life, died on the 15th of November 1865. Courtney W. Brooke had mar *578 ried Robert C. Selden before the death of Susan Byrd, but when, does not appear in the record. Fielding Lewis died without having invested the fund in bank stock, according to the request of the testatrix, though the same, it seems, has always continued to be well secured. Elizabeth Brooke and Mary Chiswell Nelson both died in the lifetime of Susan Byrd; the former leaving several children, including the said Courtney W.; the latter leaving an only child, Rebecca C., who intermarried with Edward C. Marshall of Fauquier county.
In this state of things, the question arose, and was litigated in the said two causes, who was entitled, under the said will, to the said sum of five hundred pounds sterling, with interest thereon from the death of the said Susan Byrd—whether the said Robert C. Selden and Courtney W. his wife, or the personal representatives of the said Elizabeth Brooke and Mary Chiswell Nelson.
The court below decided in favor of the latter, and accordingly decreed, by the said decree of the 17th of August 1874, “that the said Rebecca C. Marshall, under and by virtue of the last will and testament of Rebecca lunes deceased, is entitled to one moiety of the sum of five hundred pounds sterling, with interest'thereon from the 15th day of November 1865 until paid; and that the remaining moiety of the said sum, with like interest thereon, belongs to and is the property of the estate of Elizabeth Brooke deceased.”
From the decision and decree aforesaid the said Robert C. Selden and Courtney W. his wife, applied to a judge of this court for an appeal; which was accordingly allowed, and which is the appeal we now have to dispose of.
*579 The question, therefore, is, which of these contending claimants are entitled ?
On the one hand it is claimed that the representatives of Elizabeth Brooke and Mary Ohiswell ETelson are entitled, by the express terms of the will of Rebecca Innes, which gave the subject to them in the event of the marriage of Courtney W. Brooke; which •actually happened. If the intention of the testatrix, thus plainly expressed in her will, can legally be carried into effect, it must prevail-, and the claim of the said representatives must be sustained. But,
On the other hand, it is claimed, in behalf of the appellants, that the said intention, even if it actually existed, cannot legally be carried into effect; that the condition on which the property was to cease to be that.of Courtney W. Brooke, and become that of her mother Elizabeth Brooke and her aunt Mary Chiswell Helson, was a condition subsequent, in general restraint of marriage, and was therefore against the policy of the law and void, leaving the gift of the subject which had been previously made in the' will to Courtney W. Brooke to remain absolute and in full force and effect.
And this is the controversy between these contending parties which we now have to decide.
The great question involved in the case; that is,when a condition is void, as being in restraint of matrimony, and therefore against the policy of the law, was argued by the learned counsel on both sides with great ability and learning; and many decisions on the subject, both English and American, were cited and commented on. by them. Eew matters have been the subject of more frequent decisions by the courts, especially in England, and few, if any, have been the subject of greater conflict of decision than the one now under consideration. *580 We have striking evidence of the truth of this assertion in the opinion of Lord Loughborough, in Stackpole v. Beaumont, 3 Vesey R. 89. His lordship there goes into a review of the doctrine of conditions in restraint of marriage being void, and concludes that the rule is one of an arbitrary character, adopted from the Roman civil law; and having no just application to the English law, it had been strangely perverted and embarrassed in its application by the senseless refinements of the judges, until it had become impossible for any one to know, with any approximation towards certainty, what the law of England upon the subject is; and he thus concludes: “ The authorities stand so well ranged (upon either side) that the court would not appear to act too boldly, whatever side of the proposition they should adopt; but I have always, upon repeated consideration, thought that there was not much reason in any of the determinations, founded upon a rule applicable to the laws of the country from which it is taken, but not to this country.”
In Redfield on the Law of Wills, part ii, p. 669, note 36, the author quotes these remarks of Lord Lough-borough, and says of them: “We must confess it has always seemed to us that there is great truth in the exposition of this subject, and of the decisions of the courts upon the question here made by the learned chancellor; and that the strictures which have been made upon its good taste and sound discretion are without much foundation. For where there are hundreds of conflicting cases upon a point, and no general principle running through them, by which they can be arranged or classified, what better can be done than to abandon them all, and fall back upon the reason and good sense of the question, as the courts have of late attempted to do ?” And Id. p. 677, the same author *581 ■says: “This whole subject, as to what conditions in restraint of marriage, shall be regarded merely in terrorem, and so void; and what as valid, is certainly, both in England and this country, involved in great uncertainty and confusion.” In the case of Dickson’s Trust (1 Sim. H. S. 37), Lord Granworth repudiates any such rule of law, as that conditions, where there is no bequest over, are to be held inoperative as mere idle threats in terrorem. And this experienced equity judge here gives utterance to an opinion which could scarcely fail to strike all minds that have examined the cases upon the point as eminently just. He says: “It is impossible to refer to the numerous cases on this subject without feeling that the judges in deciding them have never felt very sure of the ground upon which they were treading,” &c.
But without noticing these numerous cases in detail, it will be sufficient to refer to the great case of Scott v. Tyler, with the notes thereto in the last American edition of the “Leading Oases in Equity,” where all the material cases on the subject are cited and commented on; and also to 1 Story’s Eq. J., 11th edition, §§ 274-291 e, and the notes thereto. The case of Scott v. Tyler, is remarkable for having been very fully and ably argued by some of the most distinguished lawyers in England, and was decided by that great chancellor, Lord Thurlow. The edition of Story, to which we have referred, has the advantage of the additions of Kedfield, a late editor of that valuable work. By looking alone to these two principal sources of information on this subject, we may fully learn the history and present state of the doctrine in regard to conditions in restraint of marriage. But reference may also be had for the same purpose to 1 Roper on Legacies, pp. 751-833. See also 2 Lorn, on Executors &e., *582 marg. 79, 80; 1 Lom. Dig., top 838-342. It is somewhat remai’kable, that-numerous as are the cases which have been decided on the subject in England, there seems to be only one which has yet been decided by this court, and that is the case of Maddox &c. v. Maddox’s adm’r &c., 11 Gratt. 84, very much relied on by the counsel for the appellants in this case. But as that case at most only affirms the doctrine, as it seems now to be generally understood in England, in regard to-conditions in restraint of marriage, it will not be necessaiy to notice it any-further, at least for the present.
It is unnecessary to state the rule on the subject and the exceptions to it, as they seem to be at present established in England and this country. It is enough to say that this case in our opinion, is governed by principles of law, which are well settled, and cannot be denied, and to state those principles, and show their application to the case.
It is well settled and very clear, that a testator can, by his will, give propety to an unmarried female until' her marriage, and then and in that event, to other persons. Such a bequest may, incidentally, operate as at restraint upon marriage. But such a possible, or even probable effect, will not invalidate the bequest. It is a bequest which every owner of property, in the exercise of his dominion over it, and his power of disposition of it, has a right to make; and it is a bequest which may be very reasonable and proper to be made, under the circumstances of the case. A head of a family would naturally wish to dispose of his property, or an adequate portion of it, in such a way as to supply the wants of the needy members of the family, at least so long as they might, or were likely to continue to be needy, and then to dispose of it as he might deem to be just and proper. He might, therefore, se *583 cure it to the use of a female member of the family until her marriage, and then in that event to other members of the family. He might well suppose that while the first object of his bounty would need it for her support so long as she remained unmarried and had no one to provide for her, she probably would not need it when she would have a husband to provide for her; and acting on that supposition, he might well, in the-event of her marriage, give his bounty such other direction as he might think more proper and suitable to the wants and claims of other members of his family. Nothing, certainly, is more reasonable than this; and nothing is more certain than that it would be perfectly lawful for him to do this.
Now is not this precisely what, in effect, the testatrix, Sarah Innes, did in this case? She, in effect, by her will, gave the use of a debt of five hundred pounds sterling, which was due her, to Susan JByrd during her life, then to Courtney W. Brooke, daughter of Elizabeth Brooke, so long as she might remain single and unmarried, and in case of the death of the said Courtney W. under the age of twenty-one years, or of her marriage, then to the said Elizabeth Brooke and Mary Chiswell Nelson, great-neices of the testatrix. If the testatrix had plainly expressed her intention in these very words by her will, it could not be denied that their legal effect would have been as above stated. But can it make any difference that she has expressed precisely the same intention by different words ? The intention of a testator, as derived from his" will, is the polar star by which his will is to be construed. This is the well established rule of construction of wills, and it applies to cases involving the doctrine of conditions, in restraint of marriage, as has been often adjudged. 1 Roper on Legacies, 751; *584 832, and cases cited. If the object of a condition of a bequest be to restrain marriage, the condition will be void, as being against the policy of the law, and the bequest will be absolute. If a bequest be made absolutely or for life, or for any other specified period, coupled with a condition that the interest shall cease in the event of the marriage of the donee, without saying anything more; here, by the very terms of the bequest, the condition is in general restraint of marriage, and therefore void. So also, if the testator, by the condition, imposes such clogs upon the marriage, as, in effect, to prohibit it, the condition would be against the policy of the law, and void. A condition intended to be in general restraint of marriage is void. But where,the intention, by a proper construction of the will, appears to be otherwise; appears, for instance, to be to create springing and shifting uses for the benefit of different members of the testator’s family, according as their needs may seem to require, then the condition, or what is called a condition, is not against the policy of the law, and void. The question 4;hen, seems in effect to be one of intention. Did the testatrix intend to impose a general restraint upon the marriage of Courtney W. Brooke? or did she intend to make such a provision as she deemed reasonable and proper for the needs of different members of her family, and such a disposition of her property among them as she deemed to be just?
We think the latter was her intention, and that therefore it must prevail. We can conceive of no motive she could have had for doing so unreasonable a thing as to consign her great-great-niece, Courtney W. Brooke, who must at the death of the testatrix have been very young, to perpetual celibacy. But we can plainly see in the will that she had an entirely dif *585 ferent motive for doing what she did, that is, the motive of providing, reasonably, for three principal objects of her bounty, to-wit, Courtney W. Brooke, Elizabeth Brooke and Mary Chiswell Nelson. This she does by carefully creating a trust in favor of all these objects of her bounty, in these words: “Item: After the death of the said Susan Byrd, I give the said sum of money to Eielding Lewis, of Charles City, •in trust for Courtney W. Brooke, daughter of Elizabeth Brooke; and I request that it be vested in bank stock, and applied by the said Eielding Lewis for the benefit of the said Courtney as he shall think proper. Item: In ease the said Courtney W. Brooke shall die under the age of twenty-one years, or marries, I direct that the stock before given to my friend Eielding Lewis for her benefit be vested in him in trust for Elizabeth Brooke, her mother, and Mary Chiswell Nelson, my great-nieces, to be advanced to them in equal portions, as the said Eielding Lewis may think proper, and free from the control of their husbands.” Now is the whole of this trust equally valid; or is that part of it only valid which relates to Courtney W. Brooke, and all the rest void? and not only void, but a trust springing up in its place, not created by the express words of the will, but in direct conflict with them? It is admitted, or, at least, cannot be denied, that if this intention, thus declared by the will in favor of Elizabeth Brooke and Mary Chiswell Nelson, had been expressed in the form of a limitation, it would have been valid. But it is contended that it is expressed in the form of a condition, which being in general restraint of marriage, is therefore void. We have already said, that in the construction of wills we look at substance, rather than mere form of words, to ascertain the intention of the and then *586 effect to it if it be legal; and that, applying that rule, there can be no doubt as to the intention of the testatrix in this case. But, in fact, what is called a condition in this case is a conditional limitation—4 Kent’s Com. 127; 1 Lom. Dig. top p. 341—and so comes within the literal terms of the rule of which the existence seems to be admitted on all sides, and according to which the trust in favor of Mrs. Brooke and Mrs. Kelson would be valid. 1 Roper, supra. A limitation over in the event of the marriage of the first taker is always an important, if not a conclusive, circumstance to show .that a condition in terrorem, and in restraint of marriage, is not intended. 1 Lom. Dig. top p. 341. How much more strongly is that shown in this ease, in which there is not a mere limitation over, but a careful trust is created in favor of the parties to whom the limitation is made.
But it is contended that the testatrix did not intend what her words express, and that words which would have expressed a different, and her real intention, were accidentally omitted by her. The obvious answer to this view is, that even if the fact were so, yet as the words of the will have a plain meaning, and especially as they express a reasonable intention, we-must construe them accordingly, and cannot, upon mere conjecture, give to them a different meaning- and effect. It is impossible for us to say that she did not mean what she says. And if she did so mean, how could she have expressed her meaning in plainer language ?
Upon the whole, we are of opinion that there is no-error in the decree of the circuit court, and that it ought to be affirmed.
Decree aeeirmed.